**FILED**

NOV - 4 2005

JACK L. WAGNER, CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

               Plaintiff,

       v.

VICTORINO PEREZ LUVIANO,

               Defendant.
_____/

CIV. NO. S-05-2040 EJG
CR. NO. S-04-0073 EJG

ORDER DENYING MOTION TO MODIFY
AND CORRECT SENTENCE

Defendant, a federal prisoner proceeding pro se, has filed a motion to modify and correct his sentence pursuant to 28 U.S.C. § 2255. After reviewing the record and the applicable law, the court has determined that the motion may be decided without a hearing and without service on the United States Attorney because the files and records of the case affirmatively show the factual and legal invalidity of defendant's motion. Shah v. United States, 878 F.2d 1156, 1158-59 (9th Cir. 1989). For the reasons set forth below, the motion is DENIED.

///

///

1

1

## Background

2  On October 15, 2004, defendant pled guilty to one count of
3  mail fraud and aiding and abetting, in violation of 18 U.S.C. §§
4  2 and 1341. He was sentenced February 4, 2005 to a term of 46
5  months imprisonment and 36 months supervised release and ordered
6  to pay restitution in the amount of $169,387. Pursuant to the
7  terms of his plea agreement, defendant waived his rights to
8  appeal and collaterally attack his sentence. Now, however, a
9  year after his conviction, and despite the language of his plea
10  agreement, defendant has filed the instant motion seeking to
11  vacate, set aside or correct his sentence pursuant to 28 U.S.C. §
12  2255, couching substantive challenges to his plea and sentence in
13  terms of ineffective assistance of counsel.

14

## Discussion

15  As part of his plea agreement the defendant agreed to waive
16  his right to appeal his sentence and conviction, as well as his
17  right to collaterally attack his plea and sentence, so long as
18  his sentence was consistent with the stipulations contained in
19  the plea agreement concerning sentencing guideline variables.
20  Plea Agreement, 6:25-28, 7:1-24 (attached as Exhibit 1).
21  Defendant's waiver of his appellate rights is enforceable as long
22  as the waiver encompasses the grounds raised in the challenge and
23  is knowingly and voluntarily made. United States v. Joyce, 357
24  F.3d 921, 922-23 (9th Cir. 2004) (upholding waiver of appellate
25

26                                    2

1  rights); United States v. DeJarnette, 63 Fed. Appx. 284 (9th Cir.
2  2003) (upholding waiver of appeal and collateral attack).

3     Here, defendant's waiver is broad and clearly encompasses
4  the collateral attack set out in his § 2255 motion.  This is not
5  an instance where the plea agreement provides a limited waiver,
6  listing exceptions in which appellate or post-conviction attacks
7  are contemplated.  See e.g.  United States v. Aureoles, 2005 WL
8  661433 (9th Cir., March 22, 2005) (plea agreement expressly
9  reserved right to bring post-conviction attack based on
10 ineffective assistance of counsel)[1]; United States v. Shimoda,
11 334 F.3d 846 (9th Cir. 2003)(defendant retained right to
12 challenge upward departure in collateral attack).  In fact,
13 defendant was sentenced in accordance with the guideline
14 stipulations contained in the plea agreement, the only limitation
15 attached to the appeal and collateral attack waiver.  Instead of
16 providing a limited waiver, the language of the plea agreement
17 contains a broad, all-encompassing waiver giving up "any right he
18 may have to bring a post-conviction attack on his conviction or
19 his sentence."  Plea Agreement, 7:5-6.

20    Finally, defendant has not alleged or demonstrated that his
21 waiver was either involuntary or unknowing.  To the contrary,

22

23    [1] Pursuant to Rule 36-3 of the Rules of the Ninth Circuit Court of Appeals, unpublished
   dispositions are not precedent and may not be cited except in certain limited circumstances.
24 Accordingly, while Aureoles has no precedential value, it is cited  because it directly addresses
   the factual issue raised in the instant case, namely specificity of limited waivers of appellate
25 rights and, therefore, is persuasive authority.

26                                3

1  defendant admits he made a bad bargain, "detrimentally relying on
2  counsel's advice" and now seeks to set it aside. Defendant's
3  motion, 4:1-3. However, the plea agreement is clear in its
4  expression of the waiver and defendant cannot legitimately
5  contend he did not know the meaning of the waiver where the
6  agreement bears his signature, and he was specifically questioned
7  by the court about his understanding of the waiver during the
8  plea colloquy. Reporter's Transcript of Change of Plea Colloquy,
9  17:24 - 18:10 (attached as Exhibit 2).[2]

10                              Conclusion

11     Because defendant has waived his right to collaterally
12  attack his sentence, the motion is DENIED.

13     IT IS SO ORDERED.

14  Dated: November **3** , 2005

15
                              EDWARD J. GARCIA, JUDGE
16                            UNITED STATES DISTRICT COURT

17

18

19

20

21

22

23

24     [2] While an interpreter was present during the change of plea colloquy, the record is clear
       that defendant did not need the interpreter's services either during the court hearing or at the time
25     he signed the plea agreement. Reporter's Transcript, 23:17 - 24:7.

26                                   4

```
 1  McGREGOR W. SCOTT
    United States Attorney
 2  MATTHEW STEGMAN
    Assistant U.S. Attorney
 3  501 I Street, Suite 10-100
    Sacramento, California 95814
 4  Telephone: (916) 554-2910

 5

 6

 7              IN THE UNITED STATES DISTRICT COURT

 8           FOR THE EASTERN DISTRICT OF CALIFORNIA

 9  UNITED STATES OF AMERICA,    )    CR. No. S-04-0073 EJG
                                 )
10               Plaintiff,      )    PLEA AGREEMENT
                                 )
11        v.                     )
                                 )
12  VICTORINO PEREZ-LUVIANO,     )
    MISAEL PINA, and             )    DATE: October 15, 2004
13  NELSON SOTO,                 )    TIME: 10:00 p.m.
                                 )    COURT: Hon. Edward J. Garcia
14               Defendants.     )
                                 )
15
```

16                                   **I.**

17                            **INTRODUCTION**

18        **A.  Scope of Agreement:**  The indictment in this case charges

19  defendant **VICTORINO PEREZ-LUVIANO** with one count of conspiracy (18

20  U.S.C. § 371), eight counts of mail fraud (18 U.S.C. § 1341) and

21  five counts of identity theft (18 U.S.C. § 1028(a)(7)).  This

22  document contains the complete Plea Agreement between the United

23  States Attorney's Office for the Eastern District of California (the

24  "government") and the defendant regarding this case.  This Plea

25  Agreement is limited to the United States Attorney's Office for the

26  Eastern District of California and cannot bind any other federal,

27  state, or local prosecuting, administrative, or regulatory

28  authorities.

1    **B. Court Not a Party:** The Court is not a party to this Plea
2    Agreement. Sentencing is a matter solely within the discretion of
3    the Court, the Court is under no obligation to accept any
4    recommendations made by the government, and the Court may in its
5    discretion impose any sentence it deems appropriate up to and
6    including the statutory maximum stated in this Plea Agreement. If
7    the Court should impose any sentence up to the maximum established
8    by the statute, the defendant cannot, for that reason alone,
9    withdraw his guilty plea, and he will remain bound to fulfill all of
10   the obligations under this Agreement. The defendant understands
11   that neither the prosecutor, defense counsel, nor the Court can make
12   a binding prediction or promise regarding the sentence will receive.

13                                **II.**

14                      **DEFENDANT'S OBLIGATIONS**

15   **A. Guilty Pleas:** The defendant will plead guilty to Count
          Mai Fraud
16   Two. The defendant agrees that he is in fact guilty of this charge
17   and that the facts set forth in the Factual Basis attached hereto as
18   Exhibit A are accurate.

19   **B. Restitution:** The Mandatory Victim Restitution Act requires
20   the Court to order restitution to the victims of certain offenses.
21   In addition to that restitution, the defendant agrees to pay full
22   restitution to the California Employment Development Department in
23   the amount of $201,260.00. Defendant further agrees that he will
24   not seek to discharge any restitution obligation or any part of such
25   obligation in any bankruptcy proceeding.

26   **C. Special Assessment:** The defendant agrees to pay a special
27   assessment of $100 at the time of sentencing by delivering a check
28   or money order payable to the United States District Court to the

                                   2

1  United States Probation Office immediately before the sentencing
2  hearing.  If the defendant is unable to pay the special assessment
3  at the time of sentencing, he agrees to earn the money to pay the
4  assessment, if necessary by participating in the Inmate Financial
5  Responsibility Program.

## III.

### THE GOVERNMENT'S OBLIGATIONS

8       **A.  Dismissals:**  The government agrees to move, at the time of
9  sentencing, to dismiss with prejudice the remaining counts in the
10 pending Indictment.

11      **B.  Recommendations:**

12           **1.  Incarceration Range:**  The government will recommend
13 that the defendant be sentenced to the low end of the applicable
14 guideline range for his offense as determined by the United States
15 Probation Office.

16           **2.  Acceptance of Responsibility:**  If the United States
17 Probation Office determines that a three-level reduction in
18 defendant's offense level for his full and clear demonstration of
19 acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1,
20 the government will not oppose such a reduction.

## IV.

### ELEMENTS OF THE OFFENSE

23      **A.  Elements of the Offense:**  At a trial, the government would
24 have to prove beyond a reasonable doubt the following elements of
25 the offense to which the defendant is pleading guilty:

26      **Mail Fraud:**

27      First, the defendant made up a scheme or plan for obtaining
28 money or property by making false promises or statements,

3

1          Second, the defendant knew that the promises or statements were
2    false;

3          Third, the promises or statements were material;

4          Fourth, the defendant acted with the intent to defraud; and

5          Fifth, the defendant used, or caused to be used, the mails to
6    carry out or attempt to carry out an essential part of the scheme.
7    It does not matter whether the material mailed was itself false or
8    deceptive so long as the mail was used as a part of the scheme.

9

10                                    **V.**

11                          **MAXIMUM SENTENCE**

12         **A.  Maximum Penalty:**  The maximum sentence which the Court can
13    impose is 20 years of incarceration, a 3 year period of supervised
14    release, a fine of $250,000, and a special assessment of $100.  By
15    signing this Agreement, the defendant also agrees that the Court can
16    order the payment of restitution for the full loss caused by the
17    defendant's wrongful conduct.  The defendant agrees that the
18    restitution order is not restricted to the amounts alleged in the
19    specific counts to which the defendant is pleading guilty.  The
20    defendant further agrees that he will not attempt to discharge in
21    any present or future bankruptcy proceeding any restitution imposed
22    by the Court.

23         **B.  Violations of Supervised Release:**  The defendant understands
24    that if he violates a condition of supervised release at any time
25    during the term of supervised release, the Court may revoke the term
26    of supervised release and require the defendant to serve up to 2
27    additional years imprisonment.

28                                    **VI.**

4

1 **SENTENCING DETERMINATION**

2 **A. Statutory Authority:** The defendant understands that a
3 sentencing guideline range for this case will be determined by the
4 Court pursuant to the Sentencing Reform Act of 1984 (18 U.S.C.
5 §§ 3551-3742 and 28 U.S.C. §§ 991-998). The defendant further
6 understands that the Court will impose a sentence within that
7 guideline range, unless the Court finds that there is a basis for
8 departure (either above or below the range) because there exists an
9 aggravating or mitigating circumstance of a kind, or to a degree,
10 not adequately taken into consideration by the Sentencing Commission
11 in formulating the guidelines.

12 **B. Stipulations Affecting Guidelines Calculation:** The
13 government and the defendant agree that there is no material dispute
14 as to the following sentencing guidelines variables and therefore
15 stipulate to the following:

16        **1.** 2B1.1(b)(1)(H): This provision applies as the loss
17        amount is more than $400,000 but less than $1,000,000. This
18        provision adds 14 points to the base offense level.

19        **2.** 2B1.1(b)(8)(C): This provision does not apply to this
20        defendant.

21        **3.** 2B1.1(b)(9)(C)(i): This provision applies as the
22        defendants possessed 5 or more means of identification that
23        unlawfully were produced from, or obtained by the use of,
24        another means of identification.

25        **4.** Acceptance of Responsibility: See paragraph III(B)(2)
26        above.

27        **5.** No other adjustments, enhancements, or departures are
28        appropiate in this case.

5

## VII.

## WAIVERS

**A.  Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B.  Blakely waiver:** To the extent that the defendant might have a right to have any facts that will be used to determine his sentence charged in the indictment and found by a jury beyond a reasonable doubt, the defendant waives those rights, waives a grand jury indictment on those facts, and consents to have the district court find any facts necessary for the imposition of sentence under the applicable lesser standard of proof determined by the guidelines and case law prior to Blakely v. Washington, (June 24, 2004). These sentencing facts would specifically include any facts necessary to decide whether the defendant should be given an upward departure. Defendant also agrees to waive any constitutional challenge to the validity of the federal sentencing guidelines or their application to his case.  This waiver is conditioned upon the sentence imposed being in accordance with the parties' guideline stipulations.

**C.  Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives him a right to appeal his conviction and sentence.  He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any

6

1 aspect of the sentence imposed in this case as long as his sentence
2 is consistent with the stipulations set forth above about the
3 sentencing guidelines variables.  He specifically gives up his right
4 to appeal any order of restitution the Court may impose.

5     The defendant also gives up any right he may have to bring a
6 post-conviction attack on his conviction or his sentence.  He
7 specifically agrees not to file a motion under 28 U.S.C. § 2255 or §
8 2241 attacking his conviction or sentence.

9     If the defendant's conviction on any of the counts to which he
10 is pleading is ever vacated at the defendant's request, or his
11 sentence is ever reduced at his request, the government shall have
12 the right (1) to prosecute the defendant on any of the counts to
13 which he pleaded guilty; (2) to reinstate any counts that may be
14 dismissed pursuant to this agreement; and (3) to file any new
15 charges that would otherwise be barred by this agreement.  The
16 decision to pursue any or all of these options is solely in the
17 discretion of the United States Attorney's Office.  By signing this
18 agreement, the defendant agrees to waive any objections, motions,
19 and defenses he he might have to the government's decision.  In
20 particular, he agrees not to raise any objections based on the
21 passage of time with respect to such counts including, but not
22 limited to, any statutes of limitation or any objections based on
23 the Speedy Trial Act or the Speedy Trial Clause of the Sixth
24 Amendment.

25     C.  **Waiver of Attorneys' Fees and Costs:**  The defendant agrees
26 to waive all rights under the "Hyde Amendment," Section 617, P.L.
27 105-119 (Nov. 26, 1997), to recover attorneys' fees or other
28 litigation expenses in connection with the charges in the above-

7

1 | captioned matter and of any related allegations (including without
2 | limitation any charges to be dismissed pursuant to this Agreement
3 | and any charges previously dismissed).

### VIII.

#### ENTIRE PLEA AGREEMENT

6 | Other than this Plea Agreement, no agreement, understanding,
7 | promise, or condition between the government and the defendant
8 | exists, nor will such agreement, understanding, promise, or
9 | condition exist unless it is committed to writing and signed by the
10 | defendant, counsel for the defendant, and counsel for the United
11 | States.

### IX.

#### APPROVALS AND SIGNATURES

14 | **A.  Defense Counsel:** I have read this Plea Agreement and have
15 | discussed it fully with my client. The Plea Agreement accurately
16 | and completely sets forth the entirety of the agreement. I concur
17 | in my client's decision to plead guilty as set forth in this
18 | Agreement.

20 | DATED: $10\backslash15\backslash04$

Nicholas F. Reyes
Attorney for Defendant

22 | **B.  Defendant:** I have read this Plea Agreement and carefully
23 | reviewed every part of it with my attorney. I understand it, and I
24 | voluntarily agree to it. Further, I have consulted with my attorney
25 | and fully understand my rights with respect to the provisions of the
26 | Sentencing Guidelines which may apply to my case. No other promises
27 | or inducements have been made to me, other than those contained in
28 | this Agreement. In addition, no one has threatened or forced me in

8

1  any way to enter into this Plea Agreement.  Finally, I am satisfied

2  with the representation of my attorney in this case.

3

4  DATED:   _10-15-04_          Victorino Perez,
                                  VICTORINO PEREZ-LUVIANO,
5                                 Defendant

6
     **C.   Court Certified Interpreter/Translator:**  I declare that I

7  am a court certified Spanish-English interpreter/translator.  On

8  _____, I read the entire contents of the foregoing plea

9  agreement to Nelson Soto, the defendant, translating the document

10  from English to Spanish.

11  DATED:   _____

12                                Interpreter/Translator

13
     **D.   Attorney for United States:**  I accept and agree to this

14  Plea Agreement on behalf of the government.

15  DATED:   _12-15-04_              McGREGOR W. SCOTT
16                                    United States Attorney

17

18                              By: _____
                                    MATTHEW STEGMAN
19                                  Assistant U.S. Attorney

20

21

22

23

24

25

26

27

28

9

1

2

**EXHIBIT "A"**

**Factual Basis for Plea**

3    Last year, thousands of names and corresponding employee
4  information was stolen from Paychex, a payroll company, in Southern
5  California. Fraudulent unemployment benefit applications had been
6  filed with the California Employment Development Department (EDD)
7  under the names of a number of these people. The employees, at the
8  time of the applications, did not apply for these benefits.

9    Defendant Victorino Perez-Luviano, along with co-defendants
10  Misael Pina and Nelson Soto, had been receiving these fraudulently
11  obtained benefits checks at 49 West 11th Street, Apartment #B,
12  Pittsburg, California, 3262 Denver Avenue, Apartment #7, Merced,
13  California, and United States Post Office Boxes 21, 1011, and 1291
14  in French Camp, California.

15    Nelson Soto and Misael Pina were seen retrieving EDD
16  unemployment benefit checks from the post office boxes on three
17  separate dates in November and December 2003, and January 2004.

18    On February 11, 2004, during a search pursuant to warrant at 49
19  West 11th Street, Apartment #B, in Pittsburg, California, evidence
20  of the fraudulent claims was found, including EDD Unemployment
21  Insurance claim documents, post office box keys, documents
22  containing numerous names and social security numbers believed to
23  belong to true individuals, and seven false identification documents
24  to include two Social Security cards, four resident alien cards, and
25  one California Driver's license. Misael Pina was at the residence
26  and was arrested. Misael Pina waived Miranda and said the other
27  person obtaining the checks was Nelson Soto and told agents where
28  Soto lived. During the time agents were at Misael Pina's residence,
he received a phone call from Victorino Perez-Luviano on Pina's

1 cellular telephone.

2 Nelson Soto was contacted at his residence. Nelson Soto
3 identified "Sapo" as Misael Pina's partner in this scheme. During a
4 consent search of Nelson Soto's residence, fraudulent EDD
5 Unemployment Insurance claims documents and a fraudulent California
6 driver's license were found.

7 Nelson Soto stated that he had driven to Los Angeles,
8 California, with Misael Pina and "Sapo" in "Sapo's" car to purchase
9 papers with Social Security numbers, names, and other personal
10 identification information. He indicated that the information was
11 obtained on a print-out which was approximately an inch thick. He
12 also claimed that "Sapo" used the social security numbers to request
13 EDD unemployment insurance claims.

14 Nelson Soto waived Miranda and said that "Sapo" was the
15 individual to whom Misael Pina had always surrendered the fraudulent
16 EDD checks to. He claimed that "Sapo" would give Misael Pina cash
17 for the EDD checks. Nelson Soto indicated that he received $50.00
18 to $200.00 each time he helped retrieve checks for Misael Pina.
19 Victorino Perez-Luviano is Sapo.

20 On February 20, 2004, agents searched Victorino Perez-Luviano's
21 residence and vehicles in Merced, California, pursuant to search
22 warrant. During the search of the residence and vehicles, the
23 following items were found: fraudulent EDD Unemployment Insurance
24 claims documents, a post office box key, two receipts for rentals of
25 post office boxes to which fraudulently received EDD checks were
26 sent, documents containing numerous names and social security
27 numbers believed to belong to true individuals, and three false
28 identification documents including two fake social security cards

2

1  and one fake California ID card with the picture of Victorino Perez-
2  Luviano in the name of "Victor Perez".

3      Victorino Perez-Luviano waived his Miranda rights and said that
4  Misael Pina asked him to use his home address to receive
5  fraudulently obtained EDD checks.  He said Misael Pina paid him $100
6  every time Pina picked up checks.

7      The total money obtained from EDD by this fraud, determined as
8  of the date of this plea, was $201,260.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3



UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

--oOo--

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                             CASE NO.:  CR S-04-073

VICTORINO PEREZ-LUVIANO,

        Defendant.
_____/

--oOo--

REPORTER'S TRANSCRIPT

Friday, October 15, 2004

Held in United States District Court, Eastern District of California, before the HONORABLE EDWARD J. GARCIA on Friday, October 15, 2004, 10:27 a.m.

PLAINTIFF:    McGREGOR W. SCOTT
                UNITED STATES ATTORNEY
                501 I Street, #10-100
                Sacramento, California  95814
                BY:  MATTHEW STEGMAN, ASSISTANT U.S. ATTORNEY

DEFENDANT:   NICHOLAS F. REYES
                ATTORNEY AT LAW

Reported by:           Keli Rutherdale, CSR No. 10084

$E \times H \cdot 1 \, B \, 1 \, T \, 2$

DIAMOND COURT REPORTERS

120 I Street, 2nd Floor
Sacramento, CA 95814
(916) 498-9288

1  FRIDAY, OCTOBER 15, 2004, SACRAMENTO, CALIFORNIA, 10:27 A.M.

2                            --oOo--

3          THE CLERK:  Criminal S-04-073, United States versus

4  Victorino Perez-Luviano.

5          (Pause in proceeding.)

6          MR. STEGMAN:  Good morning, your Honor, Matthew

7  Stegman for the United States

8          THE COURT:  Mr. Stegman.

9          MR. REYES:  Good morning, your Honor.  Mr. Reyes

10  with the Defendant, assisted by the Spanish interpreter.

11         THE INTERPRETER:  Good morning, your Honor.  David

12  Meyers, previously sworn interpreter.

13         THE COURT:  Mr. Meyers.

14         (Pause in proceeding.)

15         THE COURT:  Give me just a minute to review my

16  notes.

17         (Discussion off the record.)

18         THE COURT:  The trial of this matter is scheduled

19  to commence October 25 of this year, and at 10:00 a.m. Today  EJG

20  is the day scheduled for the trial confirmation hearing.

21         As of October 25 we still have, by our computation,

22  twenty-nine days of speedy trial time left to commence the

23  trial.

24         Because of the case that just preceded this one on

25  calendar this morning, I was intending this morning to

                                                                2

DIAMOND COURT REPORTERS  (916) 498-9288

1    advise Counsel that I was going to change the trial date on

2    this case. And in anticipation that the other case will go,

3    I think that's the best thing to do.

4              MR. STEGMAN: Your Honor, if I may?

5              THE COURT: Yes.

6              MR. STEGMAN: We came in here -- at least the

7    Government came in here expecting to go to trial. However,

8    it appears that we may have a plea agreement to go forward

9    on today.

10             The plea agreement is the same one that was

11   submitted to this Court prior to the last status conference,

12   with one change being the loss amount.

13             THE COURT: Before you give me the change, I'll

14   find it in my personal notes, to continue with your

15   statement.

16             MR. STEGMAN: And so we were hoping that if, in

17   fact, there will be a plea this morning, if we can go

18   forward with that plea.

19             THE COURT: Mr. Reyes?

20             MR. REYES: Mr. Stegman is accurate. There will be

21   some stipulations regarding parole, loss quantity amounts,

22   which we were always at loss at to be able to determine

23   based on the discovery.

24             We are prepared to enter a plea. If the Court

25   would either trail us to the afternoon, if the Court wants

3

DIAMOND COURT REPORTERS (916) 498-9288

1  to do it today.  I know we still have time within the clock,

2  but based on the offer relayed today, the changes made

3  today, we have an agreement.

4          THE COURT:  Okay.  Let's go over it right now.  Let

5  me find the prior agreement in my notes.

6          MR. STEGMAN:  May I?

7          MR. REYES:  There are changes, your Honor.  It

8  might be more worthy --

9          THE COURT:  Let me find the other one first, then

10 you can tell me about the changes.

11          Yes, Mr. Stegman, you can you pass forward the plea

12 agreement.

13          (Pause in proceeding.)

14          THE COURT:  I was prepared to advise Counsel the

15 district courts and circuit courts throughout the country

16 are all over the place in connection with enhancements,

17 whether it's unconstitutional to even plead them in a

18 superseding indictment.

19          I've read two cases this morning where the district

20 judge held it was unconstitutional to supersede an

21 indictment with enhancements because enhancements are not

22 crimes.

23          And in one of those cases, the trial judge struck

24 the enhancements as surplusage, whether they are prejudicial

25 or not.  In any event, we may get beyond that problem right

1 now. I was going to ask Counsel to brief that out.

2 MR. REYES: I think the enhancements as alleged,

3 basically, on this plea agreement would be gone, your Honor,

4 other than, I think, one on the issue of victims.

5 (Pause in proceeding.)

6 THE COURT: One of my notes says that on July 16 of

7 this year the Defendant offered to plead guilty straight up

8 to the sheet, fourteen counts. If -- that's changed, I take

9 it?

10 MR. STEGMAN: Yes, your Honor.

11 THE COURT: Okay, hold on. Let me see if I can

12 find it.

13 (Pause in proceeding.)

14 MR. STEGMAN: Your Honor, may I? It may be that

15 the Defendant got cold feet prior to the last hearing just

16 before we were going to submit the plea agreement to the

17 Court, but the Court never got the plea agreement.

18 THE COURT: It was before that?

19 MR. STEGMAN: It would have been --

20 THE COURT: What was the date of the proposed plea

21 agreement, prior plea agreement?

22 MR. REYES: We never signed the plea agreement,

23 your Honor.

24 THE COURT: I'm talking about the date it appeared

25 on calendar?

```
 1            I can't find it real quickly right now.

 2            MR. STEGMAN:  I believe it was August 13th.

 3            (Pause in proceeding.)

 4            THE COURT:  Yep, you are right.

 5            (Pause in proceeding.)

 6            THE COURT:  Well, I can't find the written plea

 7   agreement.

 8            MR. REYES:  I think our present plea agreement

 9   would handle some of those superseding -- allegations in the

10   superseding indictment, your Honor.

11            THE COURT:  I think I've got time this morning.

12   You know what I'd prefer to do, if Counsel has time, is to

13   pass this to the end of the calendar, take a short recess,

14   then we will take it up.

15            MR. STEGMAN:  Yes, your Honor.

16            MR. REYES:  That will work.

17            Your Honor, may I have access to Mr. Luviano during

18   that period of time?

19            THE COURT:  Is that okay with the Marshal's office

20   if he talks to them in the holding tank?

21            THE MARSHAL:  Yes, your Honor.

22            (A brief recess was taken

23            from 10:35 a.m. to 11:37 a.m.)

24            THE CLERK:  Please remain seated.  Court is now in

25   session.
```

1           THE COURT: The record will show all the proper

2      parties are again before the Court in case number 04-0073,

3      U.S. v Victorino Perez-Luviano.

4           The matter was scheduled for trial confirmation

5      hearing this morning. The trial was scheduled to commence

6      October 25; however, earlier this morning on calendar in

7      open court, I was advised that the parties had reached a

8      plea agreement.

9           Has that been agreed now, Mr. Stegman?

10          MR. STEGMAN: Yes, your Honor.

11          THE COURT: You agree, Mr. Reyes?

12          MR. REYES: I believe so, your Honor. You can ask

13     the Defendant. He may have some questions.

14          THE DEFENDANT: I want him to tell me what the law

15     is on what kind of time I am going to do.

16          MR. REYES: I think he said lid, l-i-d.

17          THE INTERPRETER: Lid. I don't know. I want to

18     know how much time I am going to do.

19          MR. REYES: Your Honor, if I may interject?

20          THE COURT: Yes.

21          MR. REYES: I've explained to him the guideline

22     ranges and the sentencing, the Court not being a party, and

23     we've done the best we can with the guidelines but nothing

24     promised other than --

25          THE COURT: What I want you to do, Mr. Perez, is

1  listen carefully because I am going to review the essential
2  elements of the plea agreement that I understand you signed.
3          Do you understand me?
4          THE DEFENDANT:  Yes.
5          THE COURT:  So you listen to everything I say.
6          As I understand the plea agreement, which has been
7  signed by the Defendant, first of all, the Court is not a
8  party to the agreement.  The Defendant offers to plead
9  guilty to Count Two, mail fraud, and agrees to pay full
10 restitution in the amount of two hundred one thousand two
11 hundred sixty dollars.

12          The Defendant also agrees to waive application of
13 the Supreme Court decision Blakely v Washington to this case
14 and waives any constitutional challenge to the validity of
15 the federal sentencing guidelines or their application to
16 this case.

17          This Blakely waiver is conditioned upon the
18 sentence imposed being in accordance with the parties'
19 guideline stipulations.

20          The Defendant also agrees to waive appeal and
21 collateral attack of the conviction and sentence.

22          (Pause in proceeding.)

23          THE COURT:  And the Defendant also agrees to waive
24 all rights under the so-called Hyde Amendment, to recover
25 attorney fees or other litigation expenses in connection

8

DIAMOND COURT REPORTERS  (916) 498-9288

1 | with the charges in the indictment.

2 |      In return, the Government agrees to move, at the
3 | time of sentencing, to dismiss with prejudice the remaining
4 | counts in the pending indictment, and the Government will
5 | recommend that the Defendant be sentenced at the low end of
6 | the applicable guideline range as determined by the
7 | probation officer.

8 |      And if the U.S. Probation Office recommends a
9 | three-level reduction in Defendant's offense level for the
10 | Defendant's acceptance of responsibility, the Government
11 | will not oppose such a reduction.

12 |      And the Defendant, along with the Government,
13 | stipulates to the following guideline calculations:  That
14 | the loss amount is more than four hundred thousand but not
15 | less than one million dollars --

16 |      MR. STEGMAN:  Your Honor, "...but less than," I'm
17 | sorry.

18 |      THE COURT:  "...but less than one million dollars,"
19 | yes, you are correct.

20 |      And that the Defendant possessed five or more means
21 | of identification that unlawfully were produced from or
22 | obtained by the use of another means of identification, so
23 | that Guideline Section 2B1.1, subdivision (b)(9)(c)(1)
24 | applies, and that the Defendant accepts responsibility if
25 | the probation officer so recommends.

1    In addition to that the parties stipulate that no
2  other enhancements apply in the case.

3    Is that essentially the plea agreement, then, Mr.
4  Stegman?

5    MR. STEGMAN: Yes, your Honor.

6    THE COURT: Do you agree, Mr. Reyes?

7    MR. REYES: Yes, your Honor.

8    THE COURT: And you've discussed this with the
9  Defendant and that's what he wants to do?

10    MR. REYES: Yes, your Honor.

11    THE COURT: Is that correct, Mr. Perez? Is that
12  what you want to do? Change your plea to guilty to Count
13  Two of the indictment, which charges mail fraud, with those
14  understandings?

15    (Discussion off the record.)

16    THE DEFENDANT: Yes, your Honor.

17    THE COURT: Before accepting your guilty plea,
18  there are a number of questions I will ask you to ensure
19  that it is a valid plea, and I will have you sworn to tell
20  the truth for that purpose.

21    If you do not understand any of the questions or at
22  any time wish to consult with your attorney, please say so,
23  since it is important to a valid plea that you understand
24  each question before you answer.

25    Ms. Clerk, please swear the Defendant.

10

DIAMOND COURT REPORTERS (916) 498-9288

1       THE CLERK:  Mr. Perez, do you swear you will answer
2    truthfully the questions which are asked of you concerning
3    your entry of plea, so help you God?

4       THE DEFENDANT:  Yes, ma'am.

5       THE COURT:  Do you understand that having been
6    sworn, your answers to my questions will be subject to the
7    penalties of perjury or making a false statement if you do
8    not answer truthfully?

9       THE DEFENDANT:  Yes.

10      THE COURT:  I wish to advise you that you will be
11   sentenced under the federal sentencing guidelines and I
12   cannot now predict what your actual sentence will be.

13      If I accept your plea of guilty this morning, your
14   case will be referred to the U.S. Probation Office for a
15   report and recommendation, after which I will determine your
16   sentence.

17      Until I receive that report, I simply don't know
18   enough about you, your background, or the details and
19   circumstances of the offense to which you are offering to
20   plead guilty to predict what your actual sentence might be.

21      Therefore, I advise you that if you plead guilty,
22   you may be sentenced to a term higher than your attorney may
23   be predicting or to the maximum term, and if your attorney
24   is making a mistake in guideline computations, that will not
25   form a basis for you to withdraw your guilty plea.

11

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Also, the recommendations of the

4    Government in return for your plea of guilty are but

5    recommendations only.  They are not binding on the Court,

6    and if I decide to impose a more severe sentence than that

7    being recommended by the U.S. Attorney and your attorney,

8    you will not be entitled to withdraw your guilty plea.

9          Do you understand that?

10         THE DEFENDANT:  Yes.

11         THE COURT:  How old are you, Mr. Perez?

12         THE DEFENDANT:  Twenty-four.

13         THE COURT:  How far did you go in school?

14         THE DEFENDANT:  From first grade to high school.

15         THE COURT:  You understand what's happening here

16   this morning?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Are you presently under the influence

19   of alcohol or any drug or narcotic?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  The record will show that the Defendant

22   is responding to my questions directly in English.

23         Counsel, do either of you have any doubt as to the

24   Defendant's competence to plead at this time?

25         Mr. Reyes?

12

```
 1              MR. REYES:  No, your Honor.

 2              THE COURT:  Mr. Stegman?

 3              MR. STEGMAN:  No, your Honor.

 4              THE COURT:  I find the Defendant is competent to

 5  plead at this time.

 6              Have you had enough time now, Mr. Perez, to discuss

 7  your case and your plea of guilty with your attorney?

 8              THE DEFENDANT:  Yes.

 9              THE COURT:  Are you satisfied with your attorney's

10  representation?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Let me read to you the charge that you

13  are offering to plead guilty to.

14              (Pause in proceeding.)

15              THE COURT:  In Count Two of the superseding

16  indictment the grand jury charges you with a violation of

17  Section 1341 and subdivision two -- or excuse me -- in

18  Section 2, mail fraud, or aiding and abetting therein.

19              Specifically in that count the grand jury charges

20  that beginning at a time unknown to the grand jury but no

21  later than on or about October 17th, 2003, and continuing

22  through on or about February 20th, 2004, within the state

23  and Eastern District of California and elsewhere, that you

24  and others devised and intended to devise a scheme and

25  artifice to defraud the state of California of money and
```

1  property and obtain money and property from the state of
2  California and from others by means of materially false and
3  fraudulent pretense -- representations, pretenses, and
4  promises.

5      And that on or about November 18th, 2003, in the
6  Eastern District of California and elsewhere, for the
7  purposes of executing the scheme and artifice to defraud or
8  aiding and abetting and attempting to do so, you and others
9  knowingly caused the following item to be placed in an
10 authorized depository for mail matter to be sent and
11 delivered by the United States Postal Service and knowingly
12 caused it to be delivered by the United States Postal
13 Service according to the directions there on November 18th,
14 2003, an EDD check made payable to Maria Galvon and mailed
15 by state of California to Post Office Box 1011, French Camp,
16 California, 95231-1011.

17     Mr. Stegman, would you advise the Defendant of the
18 essential elements you would have to prove beyond a
19 reasonable doubt at trial to convict the Defendant of this
20 offense.

21     MR. STEGMAN:  Yes, your Honor.

22     (Pause in proceeding.)

23     MR. STEGMAN:  At trial the Government will prove
24 beyond a reasonable doubt the following elements of the
25 offense of mail fraud:

1          First, that the Defendant made up a scheme or plan
2   for obtaining money or property by making false promises or
3   statements.

4          Second, the Defendant knew that promises or
5   statements were false.

6          Third, the promises or statements were material.

7          Four, the Defendant acted with the intent to
8   defraud.

9          And fifth, the Defendant used or caused to be used
10  the mail to carry out or attempt to carry out an essential
11  part of the scheme.

12         It does not matter whether the material mail was
13  false or deceptive, as long as the mail was used as part of
14  the scheme.

15         THE COURT:  Mr. Perez, did you hear and understand
16  the statement of the Prosecutor of the essential elements
17  that he would have to prove at a trial to convict you of
18  this offense?

19         THE DEFENDANT:  Yes.

20         THE COURT:  That offense is punishable by up to
21  twenty years imprisonment, a three-year period of supervised
22  release, a fine of up to two hundred fifty thousand dollars,
23  a special assessment of one hundred dollars, and the Court
24  can order you to pay restitution for the full amount where
25  the full loss was caused by your wrongful conduct.

15

DIAMOND COURT REPORTERS (916) 498-9288

1           Do you understand the maximum penalties?

2               THE DEFENDANT:  Yes.

3               THE COURT:  Are you a citizen of the United States?

4               THE DEFENDANT:  No.

5               THE COURT:  Do you understand that your plea of

6    guilty may result in your deportation, denial of

7    naturalization, or exclusion from the United States?

8               THE DEFENDANT:  Yes.

9               THE COURT:  Are you presently on parole or

10   probation?

11              THE DEFENDANT:  No.

12              THE COURT:  I'm now going to advise you of the

13   constitutional rights that you will be giving up if you

14   plead guilty.

15          You have a right to plead not guilty and to stand

16   by your plea of not guilty to this charge.

17          Do you understand that right?

18              THE DEFENDANT:  Yes.

19              THE COURT:  You also have the right to a jury trial

20   on this charge and to be represented by counsel at that

21   trial.

22          Do you understand that right?

23              THE DEFENDANT:  Yes.

24              THE COURT:  At your trial you have the right to

25   see, hear, and question the witnesses against you.

16

1          Do you understand that right?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And do you understand you cannot be

4  convicted of this charge unless all twelve jurors agreed on

5  your guilt beyond a reasonable doubt at a trial?

6          THE DEFENDANT:  Yes.

7          THE COURT:  If I accept your guilty plea to this

8  charge this morning, there will be no trial; that is, by

9  pleading guilty you are giving up your right to a jury

10  trial, your right to confront and question the witnesses

11  against you, and your right to remain silent and not

12  incriminate yourself.

13          Do you understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Other than what has been said here in

16  open court or that may appear in your written plea

17  agreement, has anyone made you any other promises in

18  connection with penalty or punishment to get you to plead

19  guilty?

20          THE DEFENDANT:  No.

21          THE COURT:  Have you or anyone you know been

22  threatened, in any way, to get you to plead guilty?

23          THE DEFENDANT:  No.

24          THE COURT:  As part of your plea agreement you

25  agree to waive or give up your rights to appeal or

17

1    collaterally attack the conviction or sentence.

2              Do you understand these rights?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you have any questions about waiver

5    of appeal and collateral attack?

6              THE DEFENDANT:  No.

7              THE COURT:  Do you knowingly and voluntarily, then,

8    waive your rights to appeal and collateral attack of the

9    conviction and sentence?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Also as part of this plea agreement you

12   agree to waive any rights you may have under the recent

13   Supreme Court decision entitled Blakely v Washington.

14             Has your attorney explained these rights to you?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand them?

17             THE DEFENDANT:  Yes, I understand.

18             THE COURT:  Do you have any questions about these

19   rights?

20             THE DEFENDANT:  No.

21             THE COURT:  What is your plea, then, to Count Two

22   of the indictment, violation of Section 1341 and Section 2

23   of Title 18 U.S. Code, mail fraud or aiding and abetting

24   therein as I read it to you, guilty or not guilty?

25             THE DEFENDANT:  Guilty.

18

1          THE COURT:  And are you pleading guilty to this

2    charge freely and voluntarily, with the advice of your

3    attorney, and because, in fact, you are guilty of this

4    offense?

5          THE DEFENDANT:  Yes.  The advice of my attorney.

6          THE COURT:  Let me read to you that question again.

7          Are you pleading guilty to this charge freely and

8    voluntarily, with the advice of your attorney, and because,

9    in fact, you are guilty of this offense?

10          THE DEFENDANT:  Yes.  Because I'm guilty and my

11    attorney advised me that that is the best thing for me to do

12    also.

13          THE COURT:  Very well.  Mr. Hitt, will you please

14    advise the Court of a factual basis.

15          MR. STEGMAN:  Yes, your Honor.  Mr. Stegman.

16          THE COURT:  Mr. Stegman.

17          MR. STEGMAN:  Last year, thousands of names and

18    corresponding employee information was stolen from Paychex,

19    a payroll company, in Southern California.  Fraudulent

20    unemployment benefit applications had been filed with the

21    California Employment Development Department, or EDD, under

22    the names of a number of these people.  The employees, at

23    the time of the applications, did not apply for these

24    benefits.

25          Defendant Victorino Perez-Luviano, along with

19

DIAMOND COURT REPORTERS  (916) 498-9288

 1  co-defendants Misael Pina and Nelson Soto, had been
 2  receiving these fraudulently-obtained benefit checks at
 3  apartments in Pittsburgh, California, and Merced,
 4  California, and three United States Post Office boxes in
 5  French Camp, California.

 6       Nelson Soto and Misael Pina were seen retrieving
 7  the EDD checks from the Post Office boxes on three dates in
 8  November and December 2003 and January 2004.

 9       On February 11, 2004, during a search pursuant to
10  warrant at the Pittsburgh apartment, evidence of the
11  fraudulent claims were found, including EDD Unemployment
12  Insurance Claim documents, Post Office box keys, documents
13  containing numerous names and Social Security numbers
14  believed to belong to true individuals, and seven false
15  identification documents, including two Social Security
16  cards, four resident alien cards, and one California
17  driver's license.

18       Misael Pina was at the residence and was arrested.
19  After waiving Miranda he said the other person obtaining the
20  checks was Nelson Soto, and told the agents where Mr. Soto
21  lived.  While at Misael Pina's house, they received a phone
22  call from Victorino Perez-Luviano on Pina's cell phone.

23       Nelson Soto was contacted at his residence and
24  identified "Sapo" as Misael Pina partner in the scheme.
25  During a consent search of Mr. Nelson Soto's residence,

1  fraudulent EDD Unemployment Insurance Claims documents and a

2  fraudulent California driver's license were found.

3          Nelson Soto stated that he had driven to Los

4  Angeles, California, with Misael Pina and "Sapo" in "Sapo's"

5  car to purchase papers with Social Security numbers and

6  other information. He indicated that the information was

7  obtained on a printout, which was approximately an inch

8  thick, and claimed that "Sapo" used the Social Security

9  numbers to request EDD unemployment insurance claims.

10         Nelson Soto waived Miranda and said that "Sapo" was

11  the individual to whom Misael Pina had always surrendered

12  the fraudulent EDD checks to. He claimed that "Sapo" would

13  give Misael Pina cash for the EDD checks. Nelson Soto

14  indicated he received fifty dollars to two hundred dollars

15  each time he helped retrieve checks for Misael Pina.

16  Victorino Perez-Luviano is Sapo.

17         On February 20th, 2004, agents searched Victorino

18  Perez-Luviano's apartment and vehicles pursuant to search

19  warrant. During the search of vehicles and the residence,

20  the following items were found: Fraudulent EDD Unemployment

21  Insurance Claims documents, a Post Office box key, two

22  receipts for rentals of Post Office boxes to which

23  fraudulently-received EDD checks were sent, documents

24  containing numerous names and Social Security numbers

25  believed to belong to true individuals, and three false

1  identification documents, including two fake Social Security
2  cards and one fake California I.D. card with a picture of
3  Victorino Perez-Luviano in the name of "Victor Perez".

4       Victorino Perez-Luviano waived his Miranda rights
5  and said that Misael Pina asked him to use his home address
6  to receive fraudulently-obtained EDD checks. He said Misael
7  Pina paid him one hundred dollars every time Pina picked up
8  checks.

9       The total money obtained from EDD by this fraud,
10 determined as of the date of this plea, was two hundred one
11 thousand two hundred sixty dollars.

12       THE COURT: Mr. Perez, as far as your personal
13 conduct is concerned, did you hear and understand the
14 statements of the prosecutor?

15       THE DEFENDANT: Yes.

16       THE COURT: Is that what you did?

17       THE DEFENDANT: Yes.

18       THE COURT: The Defendant's plea of guilty is
19 accepted and the judgment of guilty is hereby entered. The
20 Court finds that there is a factual basis for the plea of
21 guilty, that the Defendant understands the nature of the
22 charge and consequences of the plea, that the Defendant
23 understands his constitutional rights, and that the
24 Defendant's plea of guilty was freely and voluntarily made.

25       This matter will now be referred to the U.S.

22

1  Probation Office for a presentence report and

2  recommendation.  Sentencing will be postponed about ten

3  weeks for that purpose.

4          THE CLERK:  January 7, your Honor.

5          THE COURT:  I'll schedule sentencing for January

6  7th, '04, at 10:00 a.m., if that date and time is agreeable

7  to Counsel.

8          MR. REYES:  Acceptable, your Honor.

9          THE COURT:  Mr. Stegman?

10         MR. STEGMAN:  Yes, your Honor.

11         THE COURT:  Do you have the original of the plea

12 agreement, Colleen?

13         THE CLERK:  Yes, I have it.

14         THE COURT:  Please hand it to the defense lawyer,

15 please.

16         (Pause in proceeding.)

17         THE COURT:  Mr. Reyes, I notice that during the

18 Rule 11 colloquy I had with the Defendant he apparently was

19 understanding me in English and answering me directly in

20 English, even though the Court's Spanish-speaking

21 interpreter was present and acting.

22         He does have some knowledge of the English

23 language?

24         MR. REYES:  I'm satisfied.  And the plea form does

25 not indicate a Spanish interpretation because it was done in

23

DIAMOND COURT REPORTERS  (916) 498-9288

1    English. He went to school here and finished high school.

2    I am aware he understands the English language.

3            THE COURT: I understood the plea agreement didn't

4    have Spanish interpreter, so the Spanish-speaking

5    interpreter has not gone over the plea agreement in Spanish

6    with the Defendant?

7            MR. REYES: He did not, your Honor.

8            THE COURT: Anything else for now, Mr. Stegman?

9            MR. STEGMAN: No, your Honor.

10           THE COURT: Mr. Reyes?

11           MR. REYES: None at this time.

12           THE COURT: Thank you.

13           (Thereupon, the proceedings

14           concluded at 12:08 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2    STATE OF CALIFORNIA    )
                            )  ss.
3    COUNTY OF SACRAMENTO   )

4

5            I, KELI RUTHERDALE, a Certified Shorthand Reporter

6    licensed by the State of California, and empowered to

7    administer oaths and affirmations pursuant to Section

8    2093(b) of the Code of Civil Procedure, do hereby certify:

9            That the said proceedings were recorded

10   stenographically by me and were thereafter transcribed by me

11   via computer-assisted transcription;

12           That the foregoing transcript is a true record of

13   the proceedings which then and there took place;

14           That I am a disinterested person to said action.

15           IN WITNESS WHEREOF, I have subscribed my name on

16   October 31st, 2005.

17

18

19                            _____
                              KELI RUTHERDALE
20                            Certified Shorthand Reporter #10084

21

22

23

24

25

                                                              25